IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE PLUMMER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| TOWN OF DICKSON; TOWN OF DICKSON POLICE DEPARTMENT; and JOHN RUIZ, individually and in his official capacity, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 13-CV-0092-JHP

**OPINION AND ORDER**

Before the Court are Defendants Town of Dickson (the "City") and Town of Dickson Police Department's ("DPD") Motion to Dismiss [Doc. No. 9]; Plaintiff's Response in opposition thereto [Doc. No. 14]; and the City and DPD's Reply to Plaintiff's Response [Doc. No. 16]. After review of the briefs and for the reasons stated below, the City and DPD's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**BACKGROUND**

Plaintiff commenced this action through the filing of her Complaint in this Court on March 12, 2013, asserting various federal and state law claims stemming from her arrest by Defendant John Ruiz ("Officer Ruiz"), a DPD Police Officer on August 1, 2011. In her Complaint, Plaintiff alleges that she was driving through the Town of Dickson, Oklahoma, on August 1, 2011, when she was stopped by Officer Ruiz for a traffic violation. Plaintiff alleges that Officer Ruiz told her he was "going to give her a break," and not write the ticket for speeding in a construction zone. [Doc. No. 2, 3]. According to Plaintiff, Officer Ruiz then

"asked Plaintiff what she would be willing to do to show her appreciation," and Plaintiff responded that "she would only 'say a gracious thank you.'" [*Id.*]  Plaintiff asserts that Officer Ruiz then asked her "what she would do if she were arrested." [*Id.*]

Next, Plaintiff alleges that Officer Ruiz asked Plaintiff if she had consumed any drugs or alcohol, which Plaintiff denied, then informed Plaintiff that her "eyes were red and dilated and that she had slurred speech." [*Id.*]  Plaintiff asserts that Defendant then improperly administered two field sobriety tests on the gravel parking lot where the traffic stop occurred.  Plaintiff contends she terminated the sobriety tests because she was unable to continue in the intense summer heat.  At that point, Officer Ruiz placed Plaintiff under arrest and placed her in the backseat of his patrol car.

While in the patrol car, Plaintiff allegedly made several requests for water, which were refused.  In addition, Officer Ruiz allegedly refused to activate the patrol car's air conditioning for a period of time.  Plaintiff alleges that Officer Ruiz then solicited oral sex from Plaintiff, telling Plaintiff that compliance with his request for a sexual favor was "the only way out of this." [*Id.* at 4].  After Plaintiff refused, she requested and received a blood test at a local hospital, then was transported to the Carter County Jail.  Plaintiff was subsequently charged with Driving Under the Influence of Drugs ("DUI").  On September 20, 2011, Plaintiff received her blood test results, which were negative for any intoxicants, and the DUI charge was dismissed.

In her Complaint, Plaintiff asserts the following claims:  (1) False Arrest and False Imprisonment in violation of the United States and Oklahoma Constitutions; (2) Sexual Assault and Harassment; (3) *Respondeat Superior*; (4) Negligence; (5) Intentional Infliction of Emotional Distress; (6) Negligent Infliction of Emotional Distress[1]; and (7) Cruel and Unusual Punishment.

---

[1] Plaintiff concedes that her Negligent Infliction of Emotional Distress claim is subsumed by her negligence claim. Accordingly, Plaintiff's independently articulated claim for Negligent Infliction of Emotional Distress is dismissed.

## DISCUSSION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir.2007) (internal quotation omitted).

**A. Plaintiff's Claims Against DPD**

The capacity of an entity to be sued is determined by the law of the state in which the federal district court is located. Fed.R.Civ.P. 17(b). Under Oklahoma law, "any person, corporation, partnership, or unincorporated association [has] capacity to ... be sued in this state." Okla. Stat. tit. 12, § 2017(B). Police departments "are not usually considered legal entities subject to suit." *Lindsey v. Thomson,* 275 Fed.Appx. 744, 747 (10th Cir.2007) (unpublished opinion) (citing *Dean v. Barber,* 941 F.2d 1210, 1214 (11th Cir.1992) and *Martinez v. Wimmer,* 771 F.2d 424 (10th Cir.1985), *vacated on other grounds,* 475 U.S. 1138, 106 S .Ct. 1787, 90 L.Ed.2d 333 (1986)). *See also, Stump v. Gates,* 777 F.Supp. 808 (D.Colo.1991) *aff'd* 986 F.2d 1429 (10th Cir.1993); *Ketchum v. Albuquerque Police Dept.,* No. 91–2200, 1992 WL 51481, at *2 (10th Cir.1992) (unpublished opinion)(a municipal police department is not a suable entity

because it lacks a legal identity apart from the municipality); *Shangreaux v. Midwest City Police Dept.,* No. 91–6013, 1991 WL 104313, at *2 (10th Cir.1991) (unpublished opinion) ("The police department of Midwest City is not a suable entity."). Because DPD is not a suable entity under Oklahoma law, this Court finds it should be dismissed from this action. Accordingly, this Court dismisses Defendant DPD from this action.

**B. 42 U.S.C. § 1983 Claim Against the City**

The City argues the 42 U.S.C. § 1983 claims against it must be dismissed because Plaintiff has failed to sufficiently plead a policy or custom that would subject the City to municipal liability. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, in order to establish liability under § 1983, the Plaintiff must prove that: (1) a person; (2) subjected or caused one to be subjected to the deprivation of a federal statutory or constitutional right; (3) by someone acting "under the color of law." 42 U.S.C. § 1983

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). "[A municipality] cannot be held liable for the acts of its employees on a theory of *respondeat superior*." *Id.* at 1188. As a result, the City cannot be made vicariously liable for acts of the individual officers under 42 U.S.C. § 1983. Rather a plaintiff must establish both (1) a municipal policy or custom,

4

and (2) a direct causal link between the policy or custom and the alleged injury. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter*, 602 F.3d at 1189-90  (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) and *City of Canton v. Harris,* 489 U.S. 378, 388-91 (1989)) (internal quotation marks omitted).

The Court finds the allegations contained in Plaintiff's Complaint sufficient to state a claim against the City under 42 U.S.C. § 1983.  First, Plaintiff alleges she was injured by a constitutional violation committed by Officer Ruiz.  In addition, Plaintiff claims the City was "negligent in failing to train and instruct its agents and employees, particularly [Officer] Ruiz, in the proper procedures for field sobriety tests, arrest, detention, and how to properly handle and transport arrestees of the opposite sex."  [Doc. No. 2,  6].[2]   Accordingly, Plaintiff's § 1983 claims against the City are sufficient to survive the City's Motion to Dismiss.

---

[2] The Court recognizes that Plaintiff must ultimately demonstrate that the City's final policymakers showed deliberate indifference to the fact that a failure to train or supervise was substantially certain to cause an injury such as the one suffered by the Plaintiff.  *See Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010).  The Court finds, however, that a municipality can be both deliberate indifference to the need for training and be negligent in training it's officers.  Therefore, Plaintiff has met the notice pleading standards set out in Fed.R.Civ.P. 8.

## C. Negligence Claim

Defendant argues that Plaintiff has failed to state a claim for negligence against the City. Oklahoma law recognizes that "*[e]mployers* may be held liable for negligence in hiring, supervising or retaining an employee." *N.H. v. Presbyterian Church (U.S.A.),* 1999 OK 88, ¶ 20, 998 P .2d 592, 600 (emphasis added). In her Complaint, Plaintiff alleges:

> [The City] … [was] negligent in failing to train and instruct its agents and employees, particularly Defendant Ruiz, in the proper procedures for field sobriety tests, arrest, detention, and how to properly handle and transport arrestees of the opposite sex.

[Doc. No. 2, 6]. The Court finds these allegations sufficient to state a claim of negligence against the City.

## D. Cruel and Unusual Punishment

Plaintiff also contends that she is entitled to damages for violation of state and federal constitutional prohibitions against cruel and unusual punishment: Okla. Const. art. 2, § 9, and the Eighth Amendment to the United States Constitution. These provisions are identical: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." Significantly, "[t]he constitutional prohibitions on cruel and unusual punishment apply only to those convicted of a crime. *Bryson v. Oklahoma Cnty. ex rel. Oklahoma Cnty. Det. Ctr.*, 261 P.3d 627, 633 (Okla. Civ. App. 2011) (citing *Whitley v. Albers,* 475 U.S. 312 (1986); *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977); *Washington v. Barry,* 55 P.3d 1036, 1039 (Okla. 2002)). As such, a person who "ha[s] been arrested and [is] in the process of being booked into jail, but … ha[s] not yet been convicted of the crime for which he was arrested" and is not "being held for trial" is not protected by the Eighth Amendment. *Id.* Here, at the time of the incidents alleged in the Complaint, Plaintiff, while certainly under arrest, had not been

convicted of a crime and was not being held for trial.  Accordingly, Plaintiff's cruel and unusual punishment claims must be dismissed.[3]

### E.  Remaining State Law Tort Claims Asserted Against the City

Plaintiff also asserted state law claims pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 151, et seq.  The GTCA contains a broad waiver of sovereign immunity, providing that a political subdivision, such as the City, "shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment ... where the political subdivision, if a private ... entity, would be liable for money damages under the laws of this state." *Id.* § 153.  The Act defines "scope of employment" to mean "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority ...." § 152(11).  The Court examines each state law tort claim in order to determine whether the City may be subject to liability.

### 1.  Sexual Assault and Harassment

Under Oklahoma law, sexual assault and harassment are not independent causes of action under Oklahoma law.  *See Brown v. Ford,* 905 P.2d 223, 230 (Okla. 1995) (*overruled on other grounds*).  Instead, the Oklahoma Supreme Court has explained that "the common-law tort of assault and battery affords a *complete* remedy (with a full recovery range) for *wrongful* intrusions by sexual advances …." *Id.*  The common law of Oklahoma with respect to the torts of assault and battery references the definitions in the Restatement (Second) of Torts.  *See Id.* at 229 n. 34 (Okla.1995).  An actor is liable for assault if he or she **"**acts intending to cause a harmful or offensive contact, ... or an imminent apprehension of such a contact," and "the other [person] is thereby put in such imminent apprehension." *Id.*  An actor is liable for battery if he or

---

[3] This dismissal applies to cruel and unusual punishment claims brought pursuant to both state and federal law.

she "acts intending to cause a harmful or offensive contact, ... or an imminent apprehension of such a contact," and "a harmful contact ... results." *Id.*  Because both of these torts require that the Officer Ruiz intend to cause harmful or offensive contact, it is clear that it cannot be committed in good faith.  Accordingly, the City cannot be liable for Plaintiff's sexual assault and harassment claim based on a theory of *respondeat superior* liability.  Plaintiff's sexual assault and harassment claims against the City must therefore be dismissed as a matter of law.

**2. False Arrest**

The tort of false arrest "is the unlawful restraint of an individual against his will." *Delong v. State ex rel. Okla. Dep't of Pub. Safety,* 1998 OK CIV APP 32, ¶ 5, 956 P.2d 937, 938 (internal citations omitted). When the unlawful detention is caused by an individual acting under authority of law, it gives rise to a claim for false arrest rather than false imprisonment. *King v. Okla. City,* No. CIV-06-1308-M, 2007 WL 1519014, at * 1 n. 4 (W.D.Okla. May 21, 2007). Under Oklahoma law, the only element required to maintain a false arrest claim is that the arrest was made without probable cause. *Gouskos v. Griffith,* 122 F.App'x 965, 970 (10th Cir.2005). Because such a tort could be committed in good faith, Plaintiff's claim for false arrest against the City will not be dismissed on this basis.

**3. Intentional Infliction of Emotional Distress**

Oklahoma courts recognize the tort of intentional infliction of emotional distress, following The Restatement (Second) of Torts § 46.  *See Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735 (Okla. 2002).  "To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."  *Schovanec v.*

*Archdiocese of Oklahoma City,* 188 P.3d 158, 175 (Okla.2008) (quoting *Computer Publications*, 49 P.3d at 735).  The Restatement (Second) of Torts § 46 explains the first element of the tort as follows:

> *i. Intention and recklessness.* The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow.

(Emphasis original).  Under the circumstances alleged in the instant case, the Court finds that this tort could not have been committed in good faith.  Accordingly, Plaintiff's intentional infliction of emotional distress claim against the City must be dismissed.

## CONCLUSION

For the reasons detailed above, the City and DPD's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED** this 29th day of May, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma